**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0708n.06
Filed: November 18, 2008

**No. 07-5802**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| CHARLES FRENCH RICHARDS, | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: SILER and McKEAGUE, Circuit Judges; LUDINGTON, District Judge.[*]

**SILER**, Circuit Judge. Defendant Charles French Richards appeals from his conviction following a guilty plea, arguing that his prosecution is barred by the five-year statute of limitations contained in 18 U.S.C. § 3282(a), and that the district court erred in denying his motion to suppress the evidence found in his storage unit. For the following reasons, we AFFIRM.

**BACKGROUND**

Richards leased self storage unit 234 at Hilldale Storage ("Hilldale") in Clarksville, Tennessee. His most recent lease was from June 1, 1999, until June 1, 2000. The lease gave

---

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

Hilldale the right to enter the unit in case of an emergency or unexpected circumstances, including a broken lock. Richards was current on the payments of the lease through March 2000.

On February 21, 2000, Gary Berg, an employee at Hilldale, discovered that the lock on unit 234 had been cut. Berg inspected unit 234 to investigate whether the unit had been burglarized and if any property was damaged. He opened one of the suitcases in the unit and found it to contain pornography, some of which were photographs of nude minors.

He told the manager, Vicki McArthur, who relayed the information to the part-owner of Hilldale, Jack Weir, who was out of town. Weir told McArthur to place one of Hilldale's locks on the storage unit and that he would investigate the matter when he returned to town. When Weir returned, he inspected unit 234. There, he saw various pornographic materials including photos of nude minors and a book about how to pick up young girls. Weir told Berg to lock the unit and later called his attorney, who told him to contact the police.

On March 2, 2000, a Hilldale employee contacted the police. Officer Jonathan Outlaw was the first officer to respond. Weir escorted Outlaw to unit 234 and unlocked the door. Weir then opened storage unit 234 without being asked by Outlaw to do so. Outlaw looked inside the unit and Weir lifted the lid of the suitcase and showed Outlaw the photographs and book they had discovered. Weir closed the door, but left it slightly ajar, and the two left the storage unit and headed toward the office.

Soon thereafter, three other officers arrived and made inspections of the unit.[1] Detective John Crabbe was also called to the scene. Crabbe stepped approximately two feet inside the unit to

---

[1]Although the other officers each inspected the storage unit, the district court determined that none of the officers entered the unit or exceeded the scope of the inspections by Weir and Berg. *See United States v. Richards*, 401 F. Supp. 2d 834, 845-47 (M.D. Tenn. 2005).

confirm what the others had told him about finding child pornography. He lifted a magazine to confirm that it was a child on the cover of the magazine and not an adult. After observing the contents of the unit and getting statements, Crabbe procured a state search warrant that evening.

Upon searching the storage unit pursuant to the warrant, the officers seized a large number of photographs and diskettes containing nude children and adults. Based upon the information obtained in the search of the storage unit, Crabbe obtained a second warrant to search Richards's apartment. Pictures, diskettes, video tapes, and computers were seized from the apartment.

Later, federal law enforcement authorities assumed jurisdiction over the case. Special Agent Bret Murray of the Federal Bureau of Investigation applied for a search warrant to search Richards's computers and the floppy disks seized in Richards's storage unit and apartment.

On February 23, 2005, Richards was indicted by a federal grand jury in the Middle District of Tennessee for knowingly possessing child pornography which had been transported in interstate and foreign commerce, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). His motions to suppress the evidence obtained from the storage unit and to dismiss because the statute of limitations had run were denied. He entered a conditional plea of guilty, reserving the right to appeal the district court's rulings on his pretrial motions and was sentenced to twenty seven months in prison and fined $25,000.

### STANDARDS OF REVIEW

This court reviews de novo a motion to dismiss based on the statute of limitations. *United States v. Grenoble*, 413.F.3d 569, 572 (6th Cir. 2005). "On appeal from a decision on a motion to suppress evidence, we review the factual findings for clear error and the legal conclusions *de novo*."

*United States v. Perez*, 440 F.3d 363, 365-66 (6th Cir. 2006) (*citing United States v. Dotson*, 49 F.3d 227, 229 (6th Cir. 1995)).

## DISCUSSION

A. Statute of Limitations

Whether Richards constructively possessed the items in unit 234 on the pivotal date of February 23, 2000, is essential in determining whether the five year statute of limitations under 18 U.S.C. § 3282(a) had run by the time the indictment was returned on February 23, 2005.

Although Richards contends he was dispossessed of the storage unit on February 21, 2000, he had a written lease on unit 234 that was to continue through June 2000, and he was the current lessee.   Replacing the missing lock did not dispossess Richards of his leased property.  When Berg replaced Richards's cut-off lock, he was merely following standard Hilldale protocol.  There is no evidence that Richards could not have replaced the Hilldale lock on his own, or instructed Hilldale employees to replace the lock for him before the date of the search by police on March 2, 2000.

Richards never relinquished control over the unit where the illegal items were located. Had he attempted to enter his storage unit and Hilldale management refused, his argument for loss of possession might be stronger, but this is not the case.  He was never evicted, nor did he ever ask that his lease be terminated.

Constructive possession of an item can be the dominion over the premises where the item is located.  *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991).  Possession of child pornography may be actual or constructive.  *United States v. Layne*, 43 F.3d 127, 131 (5th Cir. 1995).  Here, Richards continued to have dominion over the storage unit even after Berg initially

inspected it and put a new lock on it. Therefore, he constructively possessed the contents of the unit, including the child pornography.

B. Warrantless Searches

The government concedes that Richards had a Fourth Amendment expectation of privacy in his storage unit. The primary issue, then, is whether any of the officers on the scene committed an impermissible, warrantless search.

"A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (*citing Illinois v. Andreas*, 463 U.S. 765, 771 (1983)). "The Fourth Amendment is 'wholly inapplicable []to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of an governmental official.'" *United States v. Williams*, 354 F.3d 497, 509 (6th Cir. 2003) (*quoting Jacobsen*, 466 U.S. at 114-15) (quotations omitted).

A private search may be followed by a government search under certain circumstances. *Williams*, 354 F.3d at 509. "'[A]dditional invasions of . . . privacy by [a] government agent [following on the heels of a private search] must be tested by the degree to which they exceeded the scope of the private search.'" *Id.* (*quoting Jacobsen*, 466 U.S. at 115). "Thus, the [g]overnment may not exceed the scope of the private search unless it has an independent right to search." *Williams*, 354 F.3d at 509. However, the government's confirmation of prior knowledge learned by the private individuals does not constitute exceeding the scope of a private search. *See United States v. Runyan*, 275 F.3d 449, 463 (5th Cir. 2001) (*citing Jacobsen*, 466 U.S. at 120). If officers examine objects or containers that the private parties did not examine, the officers have exceeded

- 5 -

the scope of the private search. *Runyan*, 275 F.3d at 464. The police do not exceed the scope of the private search, however, if they merely look at the same materials examined by the private parties. *Id.*

Here, Berg and Weir each committed a permissible private search. Richards argues that as soon as Outlaw became involved, the search was then a warrantless government search. However, the officers merely confirmed what was found by the private searchers and, therefore, did not violate any Fourth Amendment protections.

The warrantless searches by the officers did not exceed the private search. Outlaw merely peered into unit 234 to confirm Weir's allegations that it contained child pornography. Crabbe took two steps into the unit to confirm the allegations, but this was still well within the inspection that Weir made. The officers merely confirmed the prior knowledge that Weir learned earlier in the day - that unit 234 contained child pornography. The initial search of the unit by Hilldale employees had already occurred and therefore viewing the contents of the unit as they laid in plain view cannot be deemed as exceeding the scope of the private search.

The scope of the private search was not exceeded until after a search warrant had arrived. Once the search warrant was obtained, the officers were permitted to make a reasonable inspection of the storage unit, which they did.

AFFIRMED.