# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2625

———————

United States of America,

        Appellee,

v.

Jimmie Coutentos,

        Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Northern District of Iowa.
\*
\*
\*

———————

Submitted: February 15, 2011
Filed: August 10, 2011

———————

Before RILEY, Chief Judge, WOLLMAN, Circuit Judge, and KYLE,[1] District Judge.

———————

WOLLMAN, Circuit Judge.

A jury found Jimmie Coutentos guilty of one count of sexual exploitation or attempted sexual exploitation of a minor to produce child pornography, in violation of 18 U.S.C. § 2251(a) and (d) (2000), and one count of possession or attempted possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (2000). Represented by different counsel on appeal, Coutentos argues that he was denied the effective assistance of counsel at trial, that Federal Rule of Evidence 414 is unconstitutional, that the district court made erroneous evidentiary

———————

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

rulings, and that the prosecutor engaged in misconduct.  He also contends that the district court erred by denying his motion for a judgment of acquittal.  We affirm the conviction and sentence on the count of producing child pornography and vacate the conviction and sentence on the count of possession of child pornography.

## I.  Background

In February 2009, S.Z. told her older sister, F.Z., and her mother that eight years earlier, when they were six years old, she and her cousin, K.C., had been abused by Coutentos, their grandfather.  S.Z.'s parents contacted the police, who recovered a Japanese-manufactured video camera during a search of Coutentos's home.

K.C., who was born on May 23, 1995, testified at trial that one summer day when she was approximately six or seven years old, Coutentos was caring for her and S.Z. at his home.  Coutentos asked the girls if they "wanted to keep a secret."  Trial Tr. vol. I, 44:1.  They said "yes," and he brought them to a bedroom.  He "told [them] to take off [their] clothes."  Id. at 44:6-7.  After they undressed, he asked them "[t]o get on the bed and wrestle each other," id. at 44:12, telling them that they should look at each other as they did so.  After moving the girls closer together, Coutentos left the room and returned with a video camera.  He opened the camera and pointed it at them for approximately twenty minutes while they were naked on the bed.  Coutentos left the room for a second time and returned with a can of whipped cream, which he sprayed on the girls' stomachs and asked them to lick it off each other, which they refused to do.

K.C. further testified that upon hearing their grandmother return home, Coutentos put away the video camera and told the girls not to tell anyone.  K.C. and S.Z. then cleaned the whipped cream from themselves in the bathroom.  K.C. did not tell anyone about the incident until February 2009 because she "was scared, [Coutentos] would get mad."  Id. at 49:3.  She described other times when she had felt

uncomfortable around Coutentos.  Id. at 49:13.  She explained that she originally denied the abuse because she "didn't want to tell [her parents]" and she "didn't think [her dad] would believe [her]."  Id. at 50:12-15.

S.Z., who was born on January 26, 1996, also testified about the incident. According to her account, the video camera was present when they entered the room. After Coutentos retrieved the whipped cream, he spread it on her breast and pubic area.  She refused to lick it off K.C., telling Coutentos that she "did not like whipped cream."  Id. at 89:3-4.  When Coutentos became aware that their grandmother was returning, the girls cleaned themselves with a washcloth.  Coutentos told them "not to tell Grandma" what had happened.  Id. at 92:20.  S.Z. stated that she did not tell her grandmother because she "was scared" of Coutentos.  Id. at 92:25.  S.Z. further testified that Coutentos had showed her *Playboy* magazines on more than one occasion, telling her to "look in [them]."  Id. at 96:2.

F.Z., S.Z.'s older sister, testified that when she was four or five years old, Coutentos asked her to come into his bedroom with him so that he could show her something.  She and Coutentos sat on the bed, and Coutentos showed her sexually explicit pictures in a magazine and "then he showed [her] a picture of what he wanted [her] to do."  Trial Tr. vol. II, 143:22-24.  Coutentos stood up, unzipped his pants, pulled out his penis, and "told [her] to put [her] mouth on it," which she did.  Id. at 145:10-12.  Shortly thereafter, she "pulled away and [she] went to the bathroom. . . . [She] rinsed out [her] mouth and then [she] went and [she] sat on the chair with [her] grandma."  Id. at 145:14-23.  F.Z. testified that she did not tell her grandmother about what had happened because she "was confused" and "didn't know what to do."  Id. at 146:5-8, 160:15.  Years later, she discussed the incident after she had learned that her sister and cousin "were also victims."  Id. at 146:12-13.  She recalled that "[i]t was always in the back of [her] head, but [she] didn't want to ruin anyone's life."  Id. at 146:25-147:1.

-3-

Following F.Z.'s testimony, the district court gave a cautionary instruction, which explained to the jury that they had just heard "other acts" evidence:

> Remember, even if you find that [Coutentos] may have committed other acts, this is not evidence that he committed the acts charged in this case. You may not convict a person simply because you believe he may have committed other acts. [Coutentos] is on trial only for the crimes charged, and you may consider the evidence of other acts only on the issues of [Coutentos's] intent and inherent tendency to commit the acts charged in the indictment.

Id. at 152:17-153:1. This instruction was included with the final instructions given to the jury.

At the close of the government's case, Coutentos moved for a judgment of acquittal. After the motion was denied, he called as his first witness his wife, Patricia Coutentos (Patricia), the grandmother of K.C., S.Z., and F.Z. She testified that she and Coutentos had been married nearly fifty years, that they had lived in their current home for forty-five years, and that their grandchildren spent a lot of time at their home while they were growing up. She testified that K.C., S.Z., and F.Z. did not tell her that they felt uncomfortable around Coutentos and that she had never noticed anything unusual between them.

Patricia testified that she had never seen any inappropriate materials at their home, that Coutentos did not know how to play videos from the video camera on a television, that he did not know how to operate a computer well, and that he had never shown any interest in any kind of pornography. She testified that Coutentos did not keep pornographic magazines in the house, other than a copy of the issue of *Playboy* magazine that contained an interview with then-presidential candidate Jimmy Carter, which Coutentos thought might become a collector's item.

Following Patricia's testimony, Coutentos made an offer of proof of testimony from Dr. Kimberly Maclin regarding false and distorted memories. The government objected to the testimony, arguing that it would confuse the jury and not help it understand the evidence because none of the proffered testimony was case-specific. Id. at 248:5-8. The district court excluded the testimony, finding that it would not assist the jury in understanding the evidence or determining a fact in issue, that it failed to meet the criteria of Federal Rule of Evidence 702 and thus was excludable under Rule 403, and that the subject matter of the proffered testimony was within the common knowledge of the jury. Id. at 251:3-7, 251:22-252:3.

Coutentos then took the stand on his own behalf, denying his granddaughters' allegations. He testified that his hobbies included photography. He acknowledged that he had kept a copy of the issue of *Playboy* magazine described by his wife, but denied possessing any pornographic magazines.

Coutentos's final witness was his son and K.C.'s father, Gary Coutentos, who testified that K.C. had spent a lot of time at his parents' residence and not only had she never appeared to be reluctant to visit but "[u]sually she was pretty excited and wanting to go because a lot of her cousins would be there." Id. at 270:18-20.

At the close of the evidence, the district court denied Coutentos's renewed motion for a judgment of acquittal. Following the government's closing argument, Coutentos objected to the government's improper vouching for the credibility of its witnesses and moved for a mistrial, which the district court denied. The jury convicted Coutentos of the two charges and found by way of a special verdict form that Coutentos's home was not subject to forfeiture.

On January 12, 2010, thirty-three days after the conviction, Coutentos's counsel filed a motion in arrest of judgment, arguing that the statute of limitations had run on both counts. On February 9, 2010, the district court denied the motion because (1) it

was not timely filed, and (2) the statute of limitations defense was an affirmative defense that had been waived when it was not pleaded prior to trial. D. Ct. Order of Feb. 9, 2010, at 17. The district court later sentenced Coutentos to 120 months' imprisonment on the production of child pornography count, the statutory minimum for that count. It further sentenced him to a concurrent 60-month term of imprisonment on the possession of child pornography count.

## I. Discussion

### A. Ineffective Assistance of Counsel

Coutentos asserts that his trial counsel rendered ineffective assistance by failing to timely raise a statute-of-limitations defense. Although we ordinarily do not consider ineffective-assistance claims on direct appeal, United States v. Martin, 274 F.3d 1208, 1210 (8th Cir. 2001), we will consider his claim at this time because the record regarding the failure to raise a statute-of-limitations defense is fully developed. See United States v. Reddix, 106 F.3d 236, 238 (8th Cir.1997) ("Ordinarily, such claims cannot be established without the development of facts outside the original record and therefore cannot be asserted on direct appeal, except in cases where the obvious result would be a plain miscarriage of justice or inconsistent with substantial justice, or where the district court has fully developed a record on the ineffective counsel issue." (internal quotation marks and citation omitted)). To prevail on an ineffective-assistance-of-counsel claim, a defendant must establish: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).

Coutentos argues that the general five-year statute-of-limitations period of 18 U.S.C. § 3282 applied to both counts of his conviction. That statute provides: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the

information is instituted within five years next after such offense shall have been committed." At the time of the offense conduct, there was another more-specific limitations period set forth in 18 U.S.C. § 3283 (2000), which ran until the minor victim's twenty-fifth birthday: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years." Sexual abuse "includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." See 18 U.S.C. § 3509(a)(8); see also Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 330018(a), 108 Stat. 2149 (repealing newly-superfluous § 3509(k) and transferring the child-abuse statute of limitations to § 3283).

Coutentos argues that § 3283 does not apply to either the offense of producing child pornography or the offense of possessing child pornography. We must determine whether each offense involves the sexual abuse of a child such that § 3283 is the governing limitations period. Section 2251(a) defines the offense of producing child pornography as "any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a) (2000). Thus, the offense of producing child pornography involves the "sexual abuse" of a child as that term is defined in § 3283. Accordingly, we conclude that § 3283 is the governing limitations period for the production charge.

Section 2252A defines the possession charge and other activities relating to material constituting or containing child pornography. To be guilty under § 2252A does not require "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit

-7-

conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." Thus, the offense of possessing child pornography does not constitute sexual abuse of a child. Section 3283 extends the statute of limitations for offenses "involving the sexual or physical abuse of a child under the age of 18 years," *i.e.*, offenses involving acts against children. We must therefore determine whether the offense of possessing child pornography "involves" the sexual abuse of a child.

To be sure, child pornography is a "permanent record of a child's [sexual] abuse, [and] the continued circulation itself [] harm[s] the child who had participated." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249 (2002). The ongoing harm is to the victim's "reputation and emotional well-being," id., "haunting the children in years to come," Osborne v. Ohio, 495 U.S. 103, 111 (1990). Congress originally enacted § 3283 to provide sexual abuse victims the opportunity to bring suit until the age of 25 years old. See United States v. Leo Sure Chief, 438 F.3d 920, 922 (9th Cir. 2006) ("In 1990, Congress enacted [§ 3283] allowing the prosecution of sexual abuse crimes until the victim reached 25 years of age."). "In 2003, Congress again amended [§ 3283] to extend the statute of limitations so that the government could continue to prosecute suspected child abusers at any time 'during the life of the child.'" Id. There is no doubt that § 3283 provides victims time to bring suit against their abusers. Does someone who merely possesses child pornography sexually abuse the child portrayed in the images? No more than the offense of possessing methamphetamine involves the act of producing it, does the offense of possessing child pornography involve the sexual abuse of a child. That a producer of child pornography will possess it at the time of the abuse is insufficient to change our view that the offense of possessing child pornography itself does not involve an act against a child, *i.e.*, the sexual abuse of a child. Thus, we conclude that § 3283 is inapplicable and that § 3282 is the governing limitations period on the possession count. See, e.g., United States v. Burkhart, 602 F.3d 1202, 1206 (10th Cir. 2010) (applying five-year limitation period to possession of child pornography offense); United States v. Welton, No. CR 09-

00153 MMM, 2009 WL 4507744, *16 (C.D. Cal. Nov. 30, 2009) (unpublished) ("At the time of the conduct alleged in the indictment, possession of child pornography was governed by the general five-year statute of limitations set forth in 18 U.S.C. § 3282 for non-capital offenses."); United States v. Richard, 301 F. App'x 480, 482 (6th Cir. 2008) (unpublished) (applying five-year limitations period to possession).

On July 27, 2006, Congress enacted 18 U.S.C. § 3299, which provided that "[n]otwithstanding any other law, an indictment may be found or an information instituted at any time without limitation" "for any felony" under 18 U.S.C. §§ 2251 and 2252A. At that time S.Z. and K.C. were ten and eleven years old respectively, thus the limitations period found in § 3283 governing the count for producing child pornography had not run, and § 3299 had the effect of modifying the limitations period that applied to that conduct. Accordingly, Coutentos's counsel's failure to raise a statute-of-limitations defense on that count did not constitute ineffective assistance because the governing limitations period had not yet run on that count.

Section 3299 could not have extended the limitations period on the count for possession of child pornography if § 3282's limitation period had already run. See United States v. Madia, 955 F.2d 538, 540 (8th Cir. 1992) ("Congress, of course, has the power to extend the period of limitations without running afoul of the ex post facto clause, provided the [original] period has not already run."). Thus, July 27, 2001, is the cut-off date for determining whether § 3299 governs the second count or whether the prosecution was barred by § 3282.

Coutentos's counsel's failure to raise a statute-of-limitations defense on the possession count fell below an objective standard of reasonableness. The indictment stated that the alleged conduct had occurred eight years earlier, "in or around 2001." The government did not present any specific evidence that the alleged conduct occurred on or after July 27, 2001. Indeed, the government itself is unsure when the conduct occurred, asserting that the incident "may have taken place within § 3282's

five years before the enactment of § 3299." Appellee's Br. 16 n.3. K.C. and S.Z. testified that the incident occurred during the summer. Although on direct examination, S.Z. testified that she was "around the age of six" when the incident occurred, on cross examination she stated that she was five years old in 2001. K.C. testified that she was six or seven years old, but also agreed that she had been five or six, which could have been 2000 through 2002. The jury was instructed only that the conduct occurred "in or around 2001." During the sentencing hearing, the district court stated that it would be "speculating" to find that the conduct extended beyond the summer of 2001 based on the evidence that had been presented at trial.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 692. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

We conclude Coutentos has shown that, but for his counsel's error, there is a reasonable probability that the result on the count of possessing child pornography would have been different. As stated above, § 3299's enactment on July 27, 2006, could have extended § 3282's limitations period on that count only if that limitations period had not already run. The evidence presented at trial was unclear when during the summer of 2001 the incident occurred. There is a reasonable probability that the conduct occurred prior to July 27, 2001, with the result that the limitations period would have run before § 3299 was enacted, foreclosing any prosecution on the count of possession of child pornography. Accordingly, the conviction and sentence imposed on that count must be vacated.

## B. Admission of Rule 414 Testimony

Coutentos contends that the district court erred in admitting F.Z.'s testimony regarding an uncharged incident of sexual abuse. He asserts that Rule 414 is unconstitutional because it violates Fifth Amendment due process rights. A challenge to the constitutionality of a rule of evidence is reviewed *de novo*. United States v. Rodriguez, 581 F.3d 775, 796 (8th Cir. 2009). Federal Rule of Evidence 414(a) provides that "[i]n a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." "If the evidence of the defendant's prior sexual offense is relevant, the evidence is admissible unless its probative value is 'substantially outweighed' by one or more of the factors enumerated in [Federal Rule of Evidence] 403, including 'the danger of unfair prejudice.'" United States v. Hollow Horn, 523 F.3d 882, 887 (8th Cir. 2008) (internal quotation marks omitted).

"To determine whether [Rule 414] fails 'the due process test of fundamental fairness,' we consider whether 'the introduction of this type of evidence is so extremely unfair that its admission violates fundamental conceptions of justice.'" United States v. Mound, 149 F.3d 799, 801 (8th Cir. 1998) (citing Dowling v. United States, 493 U.S. 342, 352 (1990)). Other circuits have rejected similar facial attacks on the constitutionality of Rule 414 in light of the fact that Rule 414 is subject to the constraints of Rule 403. See United States v. LeMay, 260 F.3d 1018, 1031 (9th Cir. 2001) ("In sum, we hold that Rule 414 is constitutional and does not violate due process, equal protection, or any other constitutional guarantee."); United States v. Charley, 189 F.3d 1251, 1259 (10th Cir. 1999) ("We recently held that Rule 414 is not unconstitutional on its face, because Rule 403 applies to Rule 414 evidence, and application of Rule 403 . . . should always result in the exclusion of evidence that is so prejudicial that it violates a defendant's due process right to a fair trial." (internal quotation marks omitted)).

In <u>Mound</u>, we upheld the constitutionality of Rule 413, stating that we believed "that it was within Congress's power to create exceptions to the longstanding practice of excluding prior-bad-acts evidence." 149 F.3d at 801. For the same reason we conclude that Rule 414 does not violate the Due Process Clause. Coutentos's reliance on <u>State v. Cox</u>, 781 N.W.2d 757 (Iowa 2010), and <u>State v. Ellison</u>, 239 S.W.3d 603 (Mo. 2007), is misplaced. Both are cases applying state constitutions, not the U.S. Constitution. <u>See</u> <u>Cox</u>, 781 N.W.2d at 768; <u>Ellison</u>, 239 S.W.3d at 607-08.

We review the district court's evidentiary rulings for abuse of discretion. <u>See</u> <u>Hollow Horn</u>, 523 F.3d at 887. Rule 414 evidence is probative when the prior bad acts were similar to those with which the defendant was charged. <u>United States v. Gabe</u>, 237 F.3d 954, 959-60 (8th Cir. 2001). The trial transcript reveals that the district court carefully weighed the probative value of F.Z.'s testimony against its prejudicial effect. It found the testimony to be highly probative because of the similarities in the alleged victims' ages, gender, relationship to Coutentos, and location of the alleged sexual abuse, and what the district court characterized as "some common thread about pornographic adult magazines." Trial Tr. vol. I, 116:3-14. It also found that any prejudicial effect of F.Z.'s testimony would be mitigated by the cautionary instruction to the jury and by Coutentos's ability to cross-examine F.Z. In light of these circumstances, we conclude that the district court did not abuse its discretion in determining that the probative value of F.Z.'s testimony was "not substantially outweighed by its prejudicial effect." <u>Id.</u> at 117:11-12.

## C. Exclusion of Expert Testimony

Coutentos asserts that he was denied his constitutional right to present a defense by the district court's refusal to permit his expert witness to testify in support of his defense that his grandchildren had distorted or false memories. We review a district court's determination on the admissibility of expert testimony for abuse of discretion.

United States v. Coleman, 584 F.3d 1121, 1126 (8th Cir. 2009). Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Federal Rule of Evidence 403 permits a district court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The district court found that Dr. Maclin's testimony failed to satisfy Rule 702 because it would not help the jury in understanding the evidence or a fact in issue. Coutentos asserts that Dr. Maclin's testimony about the science of memory met the requirements of Rule 702 because her testimony would have helped the jury to understand how questioning, imagining, and discussing with others affect memories. Trial Tr. vol. II, 247:5-11. The district court found that the testimony would not do so because it was "commonsense that memories fade over time" and within the jury's "common knowledge that memory is influenced by hearing something from someone else."

The district court also found that Dr. Maclin's testimony failed to satisfy Rule 702 because the principles and methods had not been applied to the specific facts of this case. Dr. Maclin never watched the recorded interviews of K.C. and S.Z. or reviewed any case-specific information and thus could not have "applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. "As a

-13-

general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility . . . . Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Hartley v. Dillard's, Inc., 310 F.3d 1054, 1061 (8th Cir. 2002). Dr. Maclin's testimony was "fundamentally unsupported" such that it would have been of "no assistance to the jury," id., because she had not reviewed "the facts of the case," Fed. R. Evid. 702. See Cole v. Homier Distrib. Co., Inc., 599 F.3d 856, 865 (8th Cir. 2010) ("But where, as here, the expert's analysis is unsupported by the record, exclusion of that analysis is proper, as it can offer no assistance to the jury."); Neb. Plastics, Inc. v. Holland Colors Ams., Inc., 408 F.3d 410, 416 (8th Cir. 2005) ("An expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported . . . ."); cf. United States v. Vesey, 338 F.3d 913, 917 (8th Cir. 2003) (admitting testimony of expert who "had read transcripts of the preliminary hearings and reviewed documents that related to the events that gave rise to the indictment"); Hartley, 310 F.3d at 1060 ("[Expert] testified that the financial problems of the McCain Mall store were consistent with what was happening to department stores in malls around the country."); Smith v. BMW N. Am., Inc., 308 F.3d 913, 920-22 (8th Cir. 2002) (describing case-specific information expert used to support his opinion); Lauzon v. Senco Prods., Inc., 270 F.3d 681, 685 (8th Cir. 2001) (same); Clark v. Heidrick, 150 F.3d 912, 914 (8th Cir. 1998) (same); Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc., 125 F.3d 1176, 1183 (8th Cir. 1997) (same); Hose v. Chicago Nw. Transp. Co., 70 F.3d 968, 975 (8th Cir. 1995) (same).

In some cases, it might be important "for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case" such as "instruct[ing] the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports." Advisory Committee's Note on Fed. R. Evid. 702. This general testimony must "address a subject matter on which the factfinder can be assisted by an expert." Id. This is not an instance, however, where there is a need to educate the factfinder.

-14-

"Where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous." Ellis v. Miller Oil Purchasing Co., 738 F.2d 269, 270 (8th Cir. 1984) (per curiam). The jury was familiar with what happens to memory over time: it understood how questioning, imagining, and discussing with others affects memories.

The district court also excluded the evidence under Rule 403 because its probative value was outweighed by the danger of confusion of the issues, misleading the jury, considerations of undue delay, waste of time, and needless presentation of cumulative evidence. For the reasons stated above, Dr. Maclin's testimony had little probative value. Had the testimony been admitted, the government might have been required to present the pretrial interviews of K.C. and S.Z., which would have resulted in undue delay, confusion of the issues, misleading the jury, waste of time, and needless presentation of cumulative evidence. Accordingly, we conclude that the district court did not abuse its discretion in excluding this evidence.

## D. Prosecutorial Misconduct

Coutentos asserts that he should be granted a new trial in light of the prosecutor's misconduct during closing arguments. A trial court is vested with "broad discretion in controlling closing arguments and we will reverse only on a showing of abuse of discretion." United States v. Miller, 621 F.3d 723, 729 (8th Cir. 2010). "To obtain a reversal based on prosecutorial misconduct to which there was proper objection, a defendant must show that (1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct affected the defendant's substantial rights so as to deprive him of a fair trial." United States v. Montgomery, 635 F.3d 1074, 1096-97 (8th Cir. 2011).

Improper vouching may occur when the prosecutor: "(1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that

are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness." United States v. McClellon, 578 F.3d 846, 858 (8th Cir. 2009).

Coutentos first challenges the government's argument that:

And so their testimony in that regard isn't unusual because it has differences. In fact, it's more credible because it does. If it were to match, if it were to fit like a glove, that would be suspicious. Then you might have some concerns about it. . . .

And when you're evaluating their testimony, also consider the circumstances of their testimony. Did those girls stand to gain anything from coming in here and testifying? Or was the converse true? In fact, was it very, very difficult and hard for these girls to come in and testify? So hard that no one would ever come in here and say what they did if it was a lie. Why would you go through all the hardship if it was a lie? . . .

[S.Z.] doesn't get anything out of it. And something that's extremely hard to do, would she do that, would she go through all of what she had to go through, for a lie? . . .

Trial Tr. vol. III, 18:17-22, 20:2-10, 21:3-6. Coutentos contends that these arguments implied a guarantee of truthfulness and expressed personal opinions about K.C.'s and S.Z.'s credibility. The government responds that the challenged comments merely set forth reasons for the jury to believe the witnesses based on evidence elicited at trial, including personal hardship resulting from their decision to testify. See United States v. Bentley, 561 F.3d 803, 813 (8th Cir. 2009). It points out that the prosecutor repeatedly reminded the jurors that they were the ones evaluating the witnesses' credibility.

Coutentos contends that, unlike the arguments in Bentley, the prosecutor answered the questions he had posed, thus going "well beyond the argument in

-16-

Bentley." We disagree. In <u>Bentley</u>, the prosecutor addressed the witnesses' credibility and argued:

> And I submit that it is more likely that they were telling the truth, because consider how hard it is to come into a courtroom like this and tell a story like that. Why would they come in here to tell that story if it wasn't true?

<u>Id.</u> at 814. Here, as in <u>Bentley</u>, the government's argument left the issue of witness credibility to the jury, suggesting one answer that relied on evidence that was known to the jury. We conclude that the statements, while perhaps close to, did not cross the line of improper vouching.

Coutentos contends next that the following argument constituted an improper attack on his and his wife's credibility:

> And the testimony that I'm talking about, the testimony that was rehearsed, the testimony that was a collaboration, was the testimony of [Countentos] and his wife. . . .
>
> Adults will lie to avoid punishment. In this case, [Coutentos] has that motive to lie. [Coutentos's] wife also has a motive.

Trial Tr. vol. III, 19:10-13, 22:5-8. Because there was no contemporaneous objection to these statements, we review them only for plain error. <u>United States v. Mullins</u>, 446 F.3d 750, 758 (8th Cir. 2006). To obtain relief, a defendant must show (1) that there was error; (2) that the error was plain; and (3) that it affected the defendant's substantial rights. <u>Id.</u>

As indicated earlier, improper vouching may occur if a prosecutor refers to facts outside the record, implies a guarantee of truthfulness, or expresses a personal opinion about a witness's credibility. <u>See</u> <u>McClellon</u>, 578 F.3d at 858. We find that the

-17-

prosecutor's argument about collaboration was not improper because it was closely related to the facts in the case and pointed out the similarities in Coutentos' testimony. Thus, we conclude that there was no error.

Similarly, we conclude that the prosecutor's statements about motivation outlined reasons to doubt Coutentos's and his wife's credibility, but fell short of offering a personal opinion. It is permissible for a prosecutor to argue that its witness had no motive to lie and then contrast that to the motives of a defendant, see United States v. DeVore, 839 F.2d 1330, 1333 (8th Cir. 1988), and thus we conclude that the prosecutor's statements fell within the permissible range of commentary on the evidence.

Coutentos argues that the government's argument that K.C. had testified "without the support of her own father" was improper because it was not supported by evidence in the record and was made to invoke the jury's sympathy for her. Trial Tr. vol. III, 21:15. Because there was no contemporaneous objection to this argument, we review it only for plain error. McClellon, 578 F.3d at 858. "[I]f an arguably improper statement made during closing argument [was] not objected to by defense counsel, we will only reverse under exceptional circumstances." Mullins, 446 F.3d at 758. The jury was aware of K.C.'s testimony that she did not want to tell her father about the abuse because she thought that he would not believe her. It was also aware of her father's testimony regarding his conversation with K.C. following her disclosure of the incident. Accordingly, we conclude that, although arguably improper, the challenged comment does not rise to the level of reversible error.

E. Sufficiency of the Evidence

We review *de novo* the denial of a motion for judgment of acquittal, applying the same standard of review as we do to a challenge to the sufficiency of the evidence. United States v. Cook, 603 F.3d 434, 437 (8th Cir. 2010). We view the evidence in

the light most favorable to the verdict, resolving evidentiary conflicts in favor of the verdict, and accepting all reasonable inferences drawn from the evidence to support the jury's verdict. Id. "We will reverse only if no reasonable jury could have found the defendant guilty." Id.

To convict Coutentos of producing child pornography under 18 U.S.C. § 2251 (a) and (d) (2000), the government must have established that (1) at a time when K.C. or S.Z., or both, were under eighteen years of age; (2) Coutentos used, persuaded, or induced K.C. or S.Z., or both, to engage in sexually explicit conduct; (3) Coutentos voluntarily and intentionally did this for the purpose of producing at least one visual depiction of such conduct; and (4) at least one those depictions was produced using a camera that had been shipped and transported in interstate or foreign commerce. See § 2251(a). The elements are the same to prove attempted sexual exploitation of a minor except that the attempt charge requires only that Coutentos attempted to produce a visual depiction and that he carried out some act which was a substantial step toward that production. See § 2251.

We conclude that there is sufficient evidence to support the jury's verdict that Coutentos produced or attempted to produce child pornography. K.C. and S.Z. testified that they were under eighteen years of age at the time of the offense, that Coutentos asked them to engage in sexually explicit conduct, and that he pointed a video camera at them as they engaged in such conduct. There was testimony that the video camera used to record the incident had been manufactured in Japan. Accordingly, a reasonable jury could infer that Coutentos recorded K.C. and S.Z. for the purpose of producing a visual depiction of their sexually explicit conduct, in violation of § 2251(a).

We find unpersuasive Coutentos's argument that the special verdict regarding the forfeiture charge was inconsistent with the guilty verdicts and thus necessitates the conclusion that the evidence was insufficient to support his production conviction.

-19-

As the Supreme Court has explained, consistency in the verdict is not required because each count in an indictment is regarded as if it was a separate indictment. See United States v. Powell, 469 U.S. 57, 62 (1984); see also United States v. Wisecarver, 598 F.3d 982, 986 (8th Cir. 2010) ("[A] defendant may not challenge a conviction because it is inconsistent with another part of the jury's verdict."). We also find meritless Coutentos's other arguments that attack the jury's credibility determinations.

## III. Conclusion

The conviction and sentence on the count of production of child pornography are affirmed. The conviction and sentence on the count of possession of child pornography are vacated, and the case is remanded to the district court for entry of judgment of dismissal on that count.

_____