# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3703

_____

United States of America

*Plaintiff - Appellee*

v.

William Jennings Bryant Axsom, II

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 17, 2014
Filed: August 4, 2014

_____

Before GRUENDER, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

William Jennings Bryant Axsom, II was convicted after a jury trial of possessing and distributing child pornography. On appeal, Axsom asserts the district court erred by finding Federal Rule of Evidence 414 constitutional; misapplying Rule 414 in admitting into evidence his prior conviction for trafficking in child

pornography; denying his motion for a mistrial; and denying his motion for a new trial. Having jurisdiction under 28 U.S.C. § 1291, we affirm the district court.[1]

## I. Background

On February 2, 2010, Detective Thomas Brennan, a Denver, Colorado, police detective, was working with the Federal Bureau of Investigation's (FBI) Innocent Images Task Force. Using peer-to-peer file-sharing software called Limewire, Brennan browsed an Internet Protocol (IP) address that responded to a search term indicative of child pornography. Brennan determined the IP address belonged to a W.J.B. Axsom in Pine Bluff, Arkansas. Brennan discovered Axsom had 189 files available for sharing. Brennan downloaded 20 files from Axsom's computer, 15 of which contained images of child pornography. Brennan forwarded his downloads to the FBI in Little Rock, Arkansas. Special Agent Brandon McNab obtained a search warrant for Axsom's residence. Axsom, who was present during the search, waived his Miranda rights and admitted he subscribed to the IP address for the computer. He denied downloading child pornography, claiming he put in a search for "nylons" and Limewire downloaded the child pornography overnight without his knowledge.

Axsom was indicted for distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count 1), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 2). He had a prior 2003 federal conviction for trafficking in material involving the sexual exploitation of children, in violation of 18 U.S.C. § 2252(a)(1). In that case, he pled guilty and served 26 months in federal prison. Because of the 2003 conviction, if convicted of the distribution and possession charges, he faced statutory mandatory minimum sentences of 180 months in prison on Count 1 and 120 months in prison on Count 2. He pled not guilty, and

---

[1]The Honorable D. P. Marshall Jr., United States District Judge for the Eastern District of Arkansas.

a jury convicted him on both charges. His sentencing guideline range was 188–235 months, but the district court granted a downward departure to the statutory minimum of 180 months imprisonment.

## II. Discussion

### A. Federal Rule of Evidence 414

Axsom asserts the district court erred in admitting evidence of his 2003 child pornography conviction, contending Federal Rule of Evidence 414 is unconstitutional. We review de novo a challenge to the constitutionality of a rule of evidence. United States v. Coutentos, 651 F.3d 809, 819 (8th Cir. 2011). Rule 414(a) provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." This type of evidence "is admissible unless its probative value is substantially outweighed by one or more of the factors enumerated in [Fed. R. Evid.] 403, including the danger of unfair prejudice." Coutentos, 651 F.3d at 819 (quotation omitted).

In the court below, Axsom objected to the introduction of his prior conviction as a violation of his Fifth Amendment rights to due process and to remain silent. On appeal, Axsom abandons this argument, recognizing we have "rejected other attacks on the facial constitutionality of Rule 414." See Coutentos, 651 F.3d at 819 (Rule 414 meets "the due process test of fundamental fairness" (quotation omitted)). Instead, he now asserts Rule 414 is unconstitutional because it is "based on the over-inclusion of possession of illegal images within the same class as actual assaults upon children." He suggests we analyze its constitutionality under the framework set forth in Chambers v. United States, 555 U.S. 122 (2009), and Begay v. United States, 553

U.S. 137 (2008). Chambers and Begay, however, involve issues of statutory interpretation, not constitutional questions, and offer no basis on which to find Rule 414 unconstitutional.

Axsom next argues the district court nonetheless misapplied Rule 414 in admitting evidence of his 2003 child pornography conviction. "We review the district court's evidentiary rulings for abuse of discretion." Coutentos, 651 F.3d at 819. Axsom concedes the district court followed the proper procedure in ruling on the admissibility of the 2003 conviction, see United States v. Gabe, 237 F.3d 954, 959 (8th Cir. 2001), but argues the district court erred in finding the evidence probative. "Rule 414 evidence is probative when the prior bad acts were similar to those with which the defendant was charged." Coutentos, 651 F.3d at 819 (citing Gabe, 237 F.3d at 959–60). The district court found in both cases Axsom used a computer, a file-sharing program, and similar search terms, and he downloaded images of children of approximately the same age.

Axsom argues the cases are too dissimilar for the 2003 conviction to be probative of the current charges. He notes in the 2003 case, he downloaded and posted images on a newsgroup website, while here, he used Limewire. In the 2003 case, he pled guilty; in this case, he went to trial. In addition, in the 2003 case, he saved the images; here, he deleted, or attempted to delete, the images. Finally, Axsom asserts the search term used this time was for "nylons," rather than a term associated with child pornography.

We do not find the alleged differences cited by Axsom convincing. First, in the prior case, he used a file sharing medium, albeit not a peer-to-peer application such as Limewire. Second, how the 2003 case was resolved does not address the similarity of that conviction to these charges. Finally, to the extent deleting the

-4-

images or conducting an internet search using different terms are distinguishing factors, they are not sufficient to show the court abused its discretion in admitting the evidence of his prior conviction.

### B.  Motion for Mistrial

Axsom next asserts the district court erred in denying his motion for a mistrial, which was based on two incidents involving jurors.  We review the denial of a motion for mistrial for an abuse of discretion.  United States v. Garrett, 648 F.3d 618, 624 (8th Cir. 2011).  The first incident occurred during jury selection.  A prospective juror reported that banter between a Court Security Officer and an FBI case agent in the courtroom, while the judge and attorneys were in the jury room conducting individual voir dire, may have affected her outlook about the trial.  At the time, Axsom remained in the courtroom.  Defense counsel asked that the entire panel be struck, which would have resulted in a mistrial.  Instead, the court proposed questioning each juror when they came into the jury room about whether they were bothered by anything happening in the courtroom.  The court also agreed to recall the jurors who had already been questioned as part of voir dire to ask them the same question.  Axsom's defense counsel agreed to this procedure and withdrew his motion for a mistrial.  No other juror reported being bothered by anything that happened in the courtroom.

The second incident occurred later in the trial when an alternate juror reported overhearing two other jurors discussing the case while the jury was lining up to enter the courtroom that morning.  The court separately questioned, under oath, the alternate juror and the two jurors who made the comments and allowed the attorneys to ask questions.[2]  The court characterized the interchange between the jurors as

---

[2]The alternate juror stated she heard one juror say: "It looks like this is going to be a long day today and tomorrow. Today may be the bulk of it," and the other juror reply: "Yeah . . . But I don't know how much more they could say.  It looks like we already know where it's headed."  When questioned by the court, the two jurors

"premature deliberations." Defense counsel asked for a mistrial based on the cumulative effect of the first incident—which counsel characterized as an extrinsic influence upon the jury—and the second incident, the premature deliberations between the two jurors. After a short recess, the court denied the motion. Following the break, the court again admonished the jury to keep an open mind and not form an opinion until they heard all the evidence. On appeal, Axsom asserts the district court abused its discretion in denying his motion for mistrial based on the combination of the two incidents. We disagree.

"In order to protect a defendant's Sixth Amendment right to a fair trial as well as his or her due process right to place the burden on the government to prove its case beyond a reasonable doubt, a jury must refrain from premature deliberations in a criminal case." United States v. Gianakos, 415 F.3d 912, 921 (8th Cir. 2005) (citation omitted). Trial courts customarily admonish jurors not to discuss the merits of a case among themselves prior to submission of the case, and a jury's failure to abide by that instruction is "not a light matter." Id. "A legitimate concern that a juror's impartiality is suspect cannot be ignored." Id.

Axsom's claim fails because he has not demonstrated that there were, in fact, premature jury deliberations. In denying his motion for a mistrial, the district court found "both of these jurors have indicated that they have not formed any final opinion on the case." We agree with the district court that the comments made were "innocent grist-of-the-mill comments . . . wondering about how long things are going to take . . . [and] a regrettable, but a general comment about . . . where things are going." We also credit, as did the court, the "context of the comments"—the jurors were lining up at the time and focused on making sure everyone line up correctly,

---

confirmed their side of the conversation but denied hearing the other juror's response. Each stated they had not formed a final opinion about the case and agreed to have no further conversations about the case until it was over.

making it unlikely the comments affected anyone else. We do not believe this rises to the level of premature deliberations. Because Axsom has not shown there were premature deliberations, we need not address whether the bantering during voir dire constituted an extrinsic influence on the jury. We note, however, Axsom acquiesced in the court's handling of the matter, making it difficult for him to now allege it was an "extrinsic influence" on the jury that is sufficient to warrant a mistrial. The district court did not abuse its discretion in denying Axsom's motion for mistrial.

## C. Motion for New Trial

Finally, Axsom argues the district court should have granted his motion for new trial after his sister, a person with "extensive experience in the field of computers," submitted what he characterizes as "new evidence" concerning the operation of Limewire and how it can lead to accidental downloading of child pornography. "We review the district court's denial of a motion for a new trial based on newly discovered evidence for a clear abuse of discretion, a rigorous standard." United States v. Stroud, 673 F.3d 854, 863 (8th Cir. 2012) (quotation omitted). A defendant will not receive a new trial "unless the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." United States v. Meeks, 742 F.3d 838, 840 (8th Cir. 2014) (quotation omitted). To receive a new trial, Axsom must demonstrate "(1) the evidence was unknown or unavailable at the time of trial; (2) [he] was duly diligent in attempting to uncover the evidence; (3) the newly discovered evidence is material; and (4) the newly discovered evidence is such its emergence probably will result in an acquittal upon retrial." Id. (citations omitted).

We agree with the district court Axsom did not meet the first requirement: none of the evidence Axsom describes as "newly discovered" was unknown or unavailable to the defense at the time of trial. During the hearing on the motion for new trial, Axsom's sister testified she provided 1500 pages of material to Axsom's first attorney

prior to trial outlining how Limewire could lead to accidental downloads of child pornography. She further testified she provided information regarding Congressional hearings pertaining to Limewire to Axsom's second attorney before trial. These hearings were held over a year before Axsom's September 2010 indictment on these charges. Finally, pursuant to 18 U.S.C. § 3600A(e), Axsom was granted funds to retain a computer expert to assist him in his defense. This expert testified at trial about accidental downloads from Limewire—Axsom's "newly discovered" evidence—and defense counsel referenced the expert's testimony during closing argument.

The district court stated, "[W]hat I believe based on everything that I have seen and heard is that we're not confronting newly discovered evidence, that much of this was known at the time to the defense, that is to [Axsom's expert, attorney and sister], and what was unknown was not unavailable; that is, it was out there either on the internet or in the literature or in the computers and the computer materials that were in the case as evidence." The district court did not abuse its discretion in concluding the proposed evidence was not "newly discovered" and denying Axsom's motion for new trial.

## III. Conclusion

Based on the foregoing, we affirm.

_____