NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0298n.06

Case No. 23-3485

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 11, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| NICHOLAS VEERKAMP, | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: KETHLEDGE, THAPAR, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. A federal jury convicted Nicholas Veerkamp of sexual exploitation of a minor and possession of child pornography. The district court subsequently sentenced him to 420 months' imprisonment. Veerkamp appeals, arguing that there was insufficient evidence to support his convictions and that the district court abused its discretion when it permitted the government to admit evidence of uncharged conduct under Federal Rule of Evidence 414 to establish that he had previously produced and possessed child pornography. Because neither argument has merit, we AFFIRM.

I.

*Background.* In early 2018, Veerkamp began dating his then live-in girlfriend, Rachel McCullough. While living together, the couple shared Veerkamp's laptop but maintained separate, password-protected user accounts on the device.

Sometime in 2019, Veerkamp and McCullough experienced a "breakdown" in their relationship. (R. 90, PageID 540). As the couple drifted further apart, McCullough requested the password to Veerkamp's user account so she could access and delete explicit photographs of herself that had been saved on Veerkamp's laptop. Veerkamp gave McCullough the password, which she used to find her photos while he was at work. During McCullough's search, she discovered not only the photographs she expected to find of herself but also images of child pornography that included pictures of a little girl whom she knew and recognized. When Veerkamp later mentioned to McCullough that he intended to babysit the children of a friend, McCullough reported the images to local authorities and turned over Veerkamp's laptop. Local authorities subsequently forwarded the laptop to the Federal Bureau of Investigation ("FBI") for forensic processing.

The forensic examination of Veerkamp's laptop revealed a series of sexually explicit images involving two prepubescent female victims, first cousins, L.C. and D.W., who were both relatives of Veerkamp's best friend. Many of the images depict the victims lying asleep with their genitalia exposed. Some of the images depict a hand pulling down L.C.'s underwear to create this exposure.

The Colerain Township police arrested Veerkamp and executed a search warrant along with the FBI at his parents' home where he was then living. During the search, law enforcement officers recovered several electronic devices, including a black Motorola cell phone found inside of a vehicle parked at the home and a digital camera from a table in Veerkamp's bedroom. The digital camera contained a memory card, which stored numerous photographs, including images of Veerkamp as a teenager and additional images of child pornography. Like the pornographic images found on Veerkamp's laptop, the memory-card images show a hand pulling down the

underwear of a little girl (presumably around two-years-old) to expose her genitalia while she is sleeping. Law enforcement determined that these latest images were taken some time in 2007—over a decade prior.

A federal grand jury indicted Veerkamp on five counts related to the images of child pornography discovered on his laptop.[1] Counts 1 and 2 charged Veerkamp with the sexual exploitation of L.C. and D.W. in violation of 18 U.S.C. § 2251(a) and (e). Count 4 charged him with possession of child pornography in violation of § 2252A(a)(5)(B) and (b)(2), and Count 5 charged him with being a registered sex offender who committed a felony offense under § 2251 involving a minor in violation of § 2260A. Veerkamp pleaded not guilty to each count, and trial was set for October 24, 2022.

Before trial, the government filed a motion in limine seeking to admit into evidence images from the digital camera memory card found in Veerkamp's bedroom, including the images of child pornography. Although the memory-card images did not form the basis for any of Veerkamp's charges, the government argued that the memory-card images were admissible under Federal Rule of Evidence 414 to establish that he had committed prior acts of child molestation and thus had a propensity to also commit the charged conduct. The district court first denied the government's request. But when the government moved for reconsideration, the district court revisited the issue on the third day of trial. The court reversed its prior ruling, reasoning that the images of child pornography found on the memory card were sufficiently similar in kind to those found on Veerkamp's user account to establish their relevance and avoid unfair prejudice. When addressing

---

[1] Count 3 charged him with receiving child pornographic images of a third minor victim identified as B.F. in violation of § 2252A(a)(2)(A) and (b)(1). The government later voluntarily dismissed this count. But images of B.F. were also included in the conduct that formed the basis for Count 4 (Possession of Child Pornography) of the Second Superseding Indictment.

the images found on the memory card in its jury instructions, the district court informed the jurors that they could consider this evidence only if they "unanimously" found by a preponderance that Veerkamp had knowingly "possessed or produced" the content. (R. 94, PageID 901). The district court further emphasized that Veerkamp had not been "charged" for possessing these other images of child pornography and therefore could not be punished on the basis that the jury believed that "he may have committed similar acts in the past." (R. 94, PageID 901–02). Following deliberations, the jury returned a guilty verdict on all counts. The district court then sentenced him to a total of 420-months' imprisonment. Veerkamp now appeals.

II.

On appeal, Veerkamp argues that there was insufficient evidence to support his convictions and that the district court abused its discretion when it permitted the government to admit the images found on the memory card recovered from his bedroom. We consider these arguments in turn.

*Sufficiency of Evidence*. Veerkamp argues that there was insufficient evidence to prove any of the charged crimes because the government failed to establish his identity as the producer and possessor of the images of child pornography found on his laptop. We review challenges to the sufficiency of the evidence de novo. *United States v. Farrad*, 895 F.3d 859, 871 (6th Cir. 2018). "To test the sufficiency of the evidence, we 'must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Crump*, 65 F.4th 287, 294 (6th Cir. 2023) (quoting *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012)). In so doing, we do not weigh the evidence, assess credibility of the witnesses, or substitute our judgment for that of the factfinder. *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020). This test imposes a heavy burden on defendants as we are required

to view the evidence in a light most favorable to the government and draw "every reasonable inference" in its favor. *Crump*, 65 F.4th at 294. Moreover, "circumstantial evidence alone is sufficient to sustain a conviction." *Hendricks*, 950 F.3d at 352 (cleaned up).

Here, we find that there was ample evidence to permit the jury to find that Veerkamp produced and possessed the pornographic images of L.C. and D.W. discovered on his laptop. To begin, McCullough explained that she only discovered the images of child pornography after Veerkamp provided her with the password to his user account. There, the images resided in a folder marked "private." And when McCullough confronted Veerkamp about the images, he did not deny producing them. To the contrary, he explained to McCullough that *he had taken the images* "as a risk thing" and for the "adrenaline rush." (R. 90, PageID 546). Add to that, McCullough, who had dated Veerkamp for a year, recognized the hand depicted in the images as Veerkamp's. Later in the trial, the government introduced photographs of Veerkamp's hands that had been taken at the time of his arrest—affording jurors the opportunity to make their own comparison and assessment of the evidence. Hamilton County Sheriff's Deputy, Dale Mikes, who conducted a forensic examination of Veerkamp's laptop corroborated McCullough's findings of child pornography and reviewed other like images as well. Dep. Mikes also testified that these images had been saved to a folder titled "private" under Veerkamp's user account and that the laptop's other user account(s) could not access this content without special overriding privileges. FBI Special Agent Jonathan Jones, who had reviewed the forensic report for this matter, testified that a Motorola cellphone had captured the pornographic images of L.C. and D.W.—the same kind of device which had been confiscated during the warranted search. Additionally, L.C.'s mother and D.W.'s mother each identified their daughters in the images found on Veerkamp's laptop. Further, D.W.'s mother testified that her adult son lived at her home and had been longtime friends

with Veerkamp. Veerkamp was a regular overnight guest of her son and, as such, had full access to the home where D.W. also lived and L.C. often slept over. Taken together, the evidence discussed above provides a reasonable basis on which a juror could infer Veerkamp's identity as the person who produced and possessed the child pornography photos of D.W. and L.C.

Although neither L.C. nor D.W. had perfect recollection of the abuse, they both testified about disturbing nighttime encounters. L.C. described an incident during which she awoke in the middle of the night while sleeping over at D.W.'s home to find Veerkamp staring at her. Upon waking, Veerkamp told L.C. a story about his prior involvement with an underage girl—including that "he didn't get in trouble with other girls." (R. 68, Page 16). Similarly, D.W. described an incident during which she felt someone lift her skirt while she slept and saw "a figure in [her] room on the ground, just, like, sitting on the ground looking at [her]." (*Id*. at Page 51). The victims also described various interactions with Veerkamp that indicated his inappropriate interest in them. For instance, Veerkamp initiated sexual conversations with both girls and gifted them items such as candy and money. Given the breadth of this evidence, any rational trier of fact could reasonably infer that Veerkamp's proven conduct established the essential elements of his crimes—namely that he sexually exploited L.C. and D.W. "for the purpose of producing [] visual depiction[s] of [this] conduct" in violation of § 2251(a) and (e) and possessed the child pornography saved on his laptop in violation of §2252A(a)(5)(B) and (b)(2).[2] His challenge to the sufficiency of the evidence thus fails.

Veerkamp resists this straightforward conclusion and seeks to undermine the jury's verdict based on the facts that (1) multiple people had access and used the laptop containing the images at

---

[2] Because Veerkamp stipulated to his status as a registered sex offender, his convictions under Counts 1 and 2 necessarily establish his conviction under Count 5.

issue; (2) the only photographic evidence establishing Veerkamp as the producer of those images was a depiction of a hand, not his face, voice, or an identifiable article of clothing; (3) there was no direct evidence showing that he was aware of the images found on his laptop; and (4) there was no direct proof that he ever molested L.C. or D.W. These arguments, at bottom, all aim their fire at the government's reliance on circumstantial as opposed to direct evidence to prove Veerkamp's crimes. But, as we have said, circumstantial evidence alone can provide the basis for a criminal conviction. *See Hendricks*, 950 F.3d at 354. And, to the extent that Veerkamp challenges the weight or credibility of this extensive evidence, such considerations are outside of our purview. *See id.* at 352 ("[W]e do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury.") (citation and internal quotation marks omitted).

*Rule 414 Evidence*. Veerkamp next argues that the district court abused its discretion when it reversed its earlier ruling and permitted the government to admit into evidence the other images of child pornography found on the memory card. We review for abuse of discretion a district court's decision to admit or exclude and will reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment." *United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015).

Rule 414(a) creates an exception to the general rule that evidence of a defendant's prior misdeeds is inadmissible to show his propensity to commit the charged offense. *United States v. Seymour*, 468 F.3d 378, 384–85 (6th Cir. 2006). Under Rule 414(a), evidence that a defendant previously molested a child may be admitted in a criminal case if (1) he is accused of child molestation and (2) the evidence is offered on a relevant matter. *United States v. Underwood*, 859 F.3d 386, 393 (6th Cir. 2017). The Rule's definition of child molestation sweeps broadly, and the parties agree that Veerkamp's charged conduct, sexual exploitation of minors and possession of

child pornography, falls within this category. *See United States v. Hruby*, 19 F. 4th 963, 966 n.1 (6th Cir. 2021).

Rule 414(a) evidence is "relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.* at 966–67. "A separate rule, Rule 104(b), governs this conditional-relevance inquiry" and "states that 'when the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.'" *Id.* at 967 (quoting Fed. R. Evid. 104(b)). When considering conditional relevance, the district court "does *not* decide if the defendant committed the similar act or even if the similar act occurred. Instead, the court only examines all the evidence in the case and decides whether the *jury* could reasonably find the conditional fact by a preponderance of the evidence." *Id.* (cleaned up).

Rule 414(a) evidence, if admitted, remains subject to Rule 403's balancing test. *Underwood*, 859 F.3d at 393. This test permits district courts to "exclude relevant evidence if its probative value is substantially outweighed" by the risk of "unfair prejudice." Fed. R. Evid. 403. "[W]e grant the district court 'very broad' discretion in making its determinations" on this front. *United States v. Libbey-Tipton*, 948 F.3d 694, 701 (6th Cir. 2020) (quoting *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006)).

Veerkamp argues that the district court failed to adhere to this conditional-relevance framework because the evidence surrounding his possession of the memory card was "speculative" and therefore did not support a showing that he committed any prior acts of child molestation. (ECF 28, Appellant's Br. 23). He adds that admission of this evidence was unfairly prejudicial for the same reason and contends that the jury likely paid undue attention to the images because they depicted the molestation of a toddler rather than an older prepubescent female child. This

circumstance, he insists, gives rise to the possibility that the jury convicted him based on this inflammatory evidence rather than for his charged conduct.[3] These arguments are unavailing.

First, the district court did not stray from Rule 414(a)'s conditional relevance framework because there was enough evidence to permit the jury to reasonably conclude by a preponderance that Veerkamp, at a minimum, possessed the images of child pornography found on the memory card. "Possession of child pornography may be actual or constructive and may be shown by direct or circumstantial evidence." *United States v. Derringer*, 844 F. App'x 802, 807 (6th Cir. 2021) (citing *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009)). Because law enforcement discovered the digital camera and memory card in Veerkamp's bedroom, where he presumably exercised dominion and control, the jury could find that he constructively possessed the images of child pornography contained therein. *See United States v. Malone*, 308 F. App'x 949, 952–53 (6th Cir. 2009) (noting that "[t]his court has repeatedly and frequently held that constructive possession may be shown to exist if the contraband is found in a defendant's bedroom or personal living space"); *see also Crump*, 65 F.4th at 295 ("[T]he quantum of evidence necessary to establish constructive possession when a person is in close proximity to the item at issue is minimal.")

---

[3] Veerkamp also argues that the district court's delay in reversing its prior ruling prejudiced his defense by "prohibit[ing] [him] from discussing this issue" of the memory card images "with the jury earlier on." (ECF 28, Appellant's Br, 25). This argument lacks merit. We have held that a district court's "ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court" and may be changed "for whatever reason it deems appropriate." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). This is especially true when "facts may have come to the district court's attention which it did not anticipate at the time of its initial ruling." *Id*. That is exactly what happened here. The district court initially denied the government's motion in limine based, in part, on its faulty understanding that the memory card had been found in the garage of Veerkamp's parents' home rather than his bedroom. The government corrected this mistaken fact in its motion for reconsideration, and the district court reversed its prior ruling with this new information in mind. We find no abuse in this reasoned approach. Moreover, we are not convinced that Veerkamp's inability to address this evidence sooner prejudiced his defense because he was permitted to cross-examine the law enforcement agents who handled the digital camera and memory card seized from his parents' home and addressed this issue during his closing arguments to the jury.

(internal quotations omitted); *United States v. Richards*, 301 F. App'x 480, 483 (6th Cir. 2008) ("Constructive possession of an item can be the dominion over the premises where the item is located."). Accordingly, the district court properly admitted the evidence, advised the jury that the law recognized both actual and constructive possession, discussed the government's burden to establish either form of possession, and then instructed jurors that it was their responsibility "to decide" whether that burden had been met. (R. 94, PageID 900). We see no reversible error in this approach.

Second, the probative value of the Rule 414 evidence was not substantially outweighed by its danger of unfair prejudice. The probative value of this evidence is clear—because Veerkamp disputed his identity as the producer and possessor of the child pornography discovered on his laptop, the government sought to introduce evidence that would establish his propensity to engage in such conduct. Although Veerkamp contends that the jury likely paid undue attention to the images of child pornography found on the memory card given its egregious nature, "we have held that if the charged conduct and the Rule 414(a) conduct are 'sufficiently similar,' the evidence satisfies Rule 403's balancing test." *Hruby*, 19 F.4th at 969 (quoting *Underwood*, 859 F.3d at 393). That is the case here. The images of L.C., D.W., and the presumed toddler were captured in the same manner—while they slept and with their genitalia exposed. Contrary to Veerkamp's position, these similarities are not undercut by the victims' apparent age differences because they ultimately show "a continuum of the same thing": the sexual exploitation of children. (R. 92, PageID 792). Moreover, we have already concluded that the factfinder could infer from the circumstantial evidence that Veerkamp constructively possessed the memory card. Thus, the absence of *direct* evidence establishing the same does not create an issue of prejudice here. Nor does the fact that Veerkamp had no prior convictions for possession of child pornography. *See id.*

at 969 (admitting Rule 414 evidence of prior acts even though the defendant had not been previously charged or convicted for said acts). Finally, any concern that the jury might have convicted Veerkamp based on the Rule 414 evidence rather than the charged conduct is mitigated by the district court's careful instruction to the jurors that they could not convict Veerkamp "simply because [they] believe[d] he may have committed similar acts in the past." (R. 94, PageID 901). Considering all this and the fact that the district court has "very broad" discretion when making Rule 403 determinations, we are satisfied that no abuse occurred. *Libbey-Tipton*, 948 F.3d at 701.

III.

For the foregoing reasons, we AFFIRM.