NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0257n.06

Case No. 25-1122

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Jun 08, 2026 |
| | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| MELVIN LAMAR TRIPLETT, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: GRIFFIN, LARSEN, and READLER, Circuit Judges.

READLER, Circuit Judge. Melvin Triplett was convicted of two counts of distributing fentanyl-laced crack cocaine resulting in death under 21 U.S.C. § 841(a)(1). Triplett argues that the government offered insufficient evidence to support these convictions. We disagree and affirm.

I.

Triplett manufactured and sold crack cocaine in Detroit. Working from Pierson Street in an area known locally as "The Boat," Triplett acquired the ingredient drugs and cooked them into crack cocaine. He then distributed the drugs to customers directly or through the assistance of associates like Shamar Malone, who also helped package the drugs. Triplett set the prices for the drugs he and his associates distributed.

In addition to producing and selling crack cocaine, Triplett also began selling fentanyl. One particular batch of crack cocaine underlies today's case. The government believed that Triplett laced the batch at issue with fentanyl. To that end, Triplett remarked to Malone that he had "f[*]ked up" the batch yet sold it anyway. R. 157, PageID 3584, 3665. Customers too noticed that something was wrong with Triplett's production. Some suffered gravely from using the flawed substance: Three customers overdosed shortly after purchasing the crack cocaine from Triplett, and two of them died.

Michael Lucas was one such victim. After purchasing the crack cocaine from Triplett, Lucas and his girlfriend, Jennifer Gossett, returned home to use the drugs. Gossett immediately sensed that "something wasn't right" with the cocaine because she felt "light headed and disoriented." R. 153, PageID 2729. Even more problematic, she could not move or speak, feeling "paralyzed." *Id.* at 2730. For Lucas, however, the reaction was far worse. After smoking the crack cocaine, Lucas fell on the bed and stopped breathing. Gossett attempted to help Lucas by performing chest compressions, but she quickly passed out. When she came to, she called 911. But by the time the paramedics arrived, Lucas was dead. Next to Lucas's body, the first responders recovered drugs that tested positive for crack cocaine and fentanyl.

Allen Peery met the same tragic fate. On the same day that Lucas made his purchase from Triplett, Peery's girlfriend Karen Campbell, who had been buying drugs from Triplett for about 20 years, called Triplett to purchase some crack cocaine. Following the call, Campbell and Peery drove to The Boat, where Malone, acting as Triplett's runner, delivered the drugs to the pair. Campbell noticed that the crack cocaine looked different than usual. Instead of appearing smooth, it had a "sandy" texture. R. 153, PageID 2833. Nonetheless, Peery smoked the crack as he drove away, at which point he immediately lost consciousness, veering the vehicle off the road.

Campbell managed to move Peery out of the driver's seat, remove the car from the ditch, and drive to a nearby parking lot to call 911. Peery died before medical help arrived, however. Campbell later gave police the leftover crack cocaine that Peery smoked, which tested positive for cocaine and fentanyl. After Peery's death, Triplett called Campbell to acknowledge that he had "switched up batches." R. 153, PageID 2843–44. And he later sent Campbell a text message to make sure she had not received any of the "bad stuff"—which Campbell understood to mean fentanyl-laced crack cocaine. *Id.* at 2846.

Law enforcement quickly connected the Lucas and Peery overdoses through their common drug source. Officers in turn arranged for Campbell, who agreed to cooperate with law enforcement, to conduct a controlled buy from Triplett. On the day of the buy, officers surveilled Triplett on Pierson Street near The Boat loading his truck with bags and also observed him sell crack cocaine to Campbell. In addition, the officers searched a nearby abandoned house tied to Triplett's operation, recovering fentanyl-laced crack cocaine from the location.

Further, phone records, cell site data, and witness testimony connected Triplett to the sale of crack cocaine that killed Lucas and Peery, placing him near the transactions that preceded the overdoses. Lab testing and autopsies confirmed that Lucas and Peery both ingested cocaine and fentanyl shortly before their deaths and, further, that the fentanyl-laced crack cocaine caused their overdoses. Additional messages recovered from Triplett's phones revealed him contacting other customers after the overdoses to ask whether they were "okay" and acknowledging that he had "f[*]ked up bad." R. 156, PageID 3449.

Based upon this amassed evidence, Triplett was later indicted on conspiracy, distribution resulting in death, and distribution resulting in serious bodily injury charges. And a jury convicted him on all counts. After the district court denied his motions for acquittal, Triplett timely appealed.

II.

Triplett argues that the government offered insufficient evidence to support his convictions for distribution of cocaine and fentanyl resulting in death. Triplett's path to relief, however, is an uphill climb. We review a challenge to the sufficiency of the evidence to see if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" "after viewing the evidence in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord United States v. Hinojosa*, 67 F.4th 334, 340 (6th Cir. 2023). Our job is not to reweigh the evidence, reevaluate witnesses' credibility, or substitute our judgment for that of the jury. *United States v. Mosley*, 53 F.4th 947, 956 (6th Cir. 2022). Instead, we accept all reasonable inferences that might have supported the jury's verdict. *See United States v. Maya*, 966 F.3d 493, 498–99 (6th Cir. 2020).

To convict Triplett of drug distribution resulting in death, the government had to prove that he knowingly or intentionally distributed a mixture or substance of a detectable amount of fentanyl and cocaine, and that death resulted from the use of that drug. *Burrage v. United States*, 571 U.S. 204, 210 (2014); *see also* 21 U.S.C. § 841(b)(1)(C). According to Triplett, the government failed to establish beyond a reasonable doubt that he provided the drugs that killed Lucas and Peery.

We disagree. The evidence presented at trial easily permitted a rational jury to conclude that Lucas and Peery died from the drugs they purchased from Triplett. *See Jackson*, 443 U.S. at 319. Start with Lucas. Gossett provided eyewitness testimony about the events leading to Lucas's death. She testified that she overheard Lucas order crack cocaine from Triplett shortly before Lucas left to buy drugs at The Boat. Gossett identified Triplett as Lucas's dealer. And Gossett described in detail how Lucas consumed the drugs in her presence and died immediately thereafter. Cell phone evidence corroborated Gossett's account: Lucas's last outgoing calls were to Triplett's

number less than an hour before his death, and cell data showed that Lucas and Triplett's phones were in the vicinity of Pierson Street at the time of the drug exchange.

The evidence surrounding Peery's death was similarly overwhelming. Campbell provided an eyewitness account of the events leading to Peery's death. She testified that she contacted Triplett by phone, drove with Peery to The Boat, and then purchased crack cocaine through Malone, whom Campbell recognized as Triplett's runner. She described to the jury the details of Peery's last moments: She and Peery smoked the crack cocaine, and Peery lost consciousness within seconds, crashed the vehicle he was driving, and died shortly thereafter. Phone records corroborated Campbell's testimony by showing repeated calls with Triplett around the time of the purchase. Cell data likewise placed Campbell's and Triplett's cell phones in the Pierson Street area during the relevant timeframe.

Additional evidence linked Triplett directly to the fentanyl-laced cocaine batch that killed both Lucas and Peery. Witnesses identified Triplett as a long-time crack dealer operating out of The Boat, using the phone numbers that Lucas and Peery called to arrange the drug sales. Malone testified that Triplett controlled the operation; he cooked the crack cocaine, handled customer calls, directed sales, and used Malone to deliver drugs. Malone further testified that Triplett admitted he thought he had "f[*]ked up" a batch of crack cocaine but sold it anyway. R. 157, PageID 3584, 3665. And after the overdoses, Triplett texted customers asking whether they were "okay," referencing "bad stuff" during the conversations. Officers also recovered from Triplett the phones he used to coordinate the drug sales. Taken together, a rational jury could conclude that Triplett sold Lucas and Peery the drugs that killed them. *See Jackson*, 443 U.S. at 319.

Seeing things otherwise, Triplett focuses his attacks on witness credibility. He emphasizes that Campbell and Gossett used drugs, had multiple dealers, and initially lied to police, making

5

them unreliable narrators of the truth. And Triplett notes Malone's opportunity and means to commit the offenses, incentive to lie about his full role in the offense, and the reduced sentence he received in exchange for his testimony against Triplett. Those credibility determinations, however, belong to the jury, not a reviewing court. *See United States v. Emmons*, 8 F.4th 454, 478 (6th Cir. 2021). In any event, as described above, the government's case did not rest on witness testimony alone. Those accounts were corroborated by phone records, cell site data, physical evidence, laboratory testing, and Triplett's own statements and messages. That evidence well exceeds what is required to sustain Triplett's conviction, when circumstantial evidence alone would be enough. *See United States v. Crump*, 65 F.4th 287, 294 (6th Cir. 2023).

\*      \*      \*      \*      \*

Viewed together and in the light most favorable to the government, the evidence was more than sufficient for a rational jury to conclude beyond a reasonable doubt that Triplett distributed the fentanyl-laced crack cocaine that killed Lucas and Peery. *See Jackson*, 443 U.S. at 319. Accordingly, we affirm.